UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DARIO PINEDA | CIVIL ACTION NO. 00-0068 |
| VERSUS | |
| MURPHY EXPLORATION & PRODUCTION COMPANY, DYNAMIC INDUSTRIES, INC., M/V WHITE DOVE, ABC INSURANCE COMPANY, DEF INSURANCE COMPANY and XYZ INSURANCE COMPANY | SECTION "J"<br><br>MAGISTRATE 1 |

## MOTION FOR PARTIAL SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes DYNAMIC INDUSTRIES, INC. ("Dynamic"), who, pursuant to FRCP 56(d), moves this Court for the entry of an Order granting Partial Summary Judgment in favor of DYNAMIC INDUSTRIES, INC. pertaining to the claims asserted against Dynamic in a Third Party Complaint filed by Murphy Exploration & Production Company ("Murphy") and issue a ruling that Louisiana law governs the claims asserted by Murphy in its Third Party Complaint against Dynamic upon the grounds and for the reasons set forth in the accompanying memorandum.

RESPECTFULLY SUBMITTED:

CRAWFORD & LEWIS
Bank One - North Tower
450 Laurel Street, Suite 1600
Post Office Box 3656
Baton Rouge, LA 70821-3656
Telephone: (225) 343-5290

JAMES C. DONOHUE (#18869)
MARTI OGDEN (#25201)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been forwarded by facsimile transmission and mailed, postage prepaid, to all counsel of record this 17th day of July, 2001.

_____
JAMES C. DONOHUE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DARIO PINEDA | CIVIL ACTION NO. 00-0068 |
| VERSUS | |
| MURPHY EXPLORATION & PRODUCTION COMPANY, DYNAMIC INDUSTRIES, INC., M/V WHITE DOVE, ABC INSURANCE COMPANY, DEF INSURANCE COMPANY and XYZ INSURANCE COMPANY | SECTION "J" <br><br> MAGISTRATE 1 |

## NOTICE OF HEARING

To:   DARIO PINEDA
Through its attorney of record
W. Patrick Klotz
530 Natchez Street, Suite 250
New Orleans, Louisiana 70130

MURPHY EXPLORATION & PRODUCTION COMPANY
Through its attorney of record
James H. Daigle
Lemle & Kelleher, L.L.P.
21st Floor, Pan-American Life Center
601 Poydras Street
New Orleans, Louisiana 70130-6097

B&J MARTIN, INC.
Through its attorney of record
L. Etienne Balart
Jones, Walker, et al.
201 St. Charles Avenue
New Orleans, LA 70170-5100


PLEASE TAKE NOTICE that Defendant, DYNAMIC INDUSTRIES, INC., will bring on for hearing the above and foregoing Motion for Partial Summary Judgment before the Honorable Carl J. Barbier, United States District Court, 500 Camp Street,

New Orleans, Louisiana 70130, on **August 1, 2001**, at 9:30 o'clock, ___.m., or as soon thereafter as counsel may be heard.

          RESPECTFULLY SUBMITTED:

          CRAWFORD & LEWIS
          Bank One - North Tower
          450 Laurel Street, Suite 1600
          Post Office Box 3656
          Baton Rouge, LA 70821-3656
          Telephone: (225) 343-5290

          _____
          JAMES C. DONOHUE (#18869)
          MARTI OGDEN (#25201)

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been forwarded by facsimile transmission and mailed, postage prepaid, to all counsel of record this 17th day of July, 2001.

_____
JAMES C. DONOHUE

4

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| DARIO PINEDA | CIVIL ACTION NO. 00-0068 |
|---|---|
| VERSUS | |
| MURPHY EXPLORATION & PRODUCTION COMPANY, DYNAMIC INDUSTRIES, INC., M/V WHITE DOVE, ABC INSURANCE COMPANY, DEF INSURANCE COMPANY and XYZ INSURANCE COMPANY | SECTION "J"  MAGISTRATE 1 |

## STATEMENT OF UNCONTESTED MATERIAL FACTS

NOW INTO COURT, through undersigned counsel, comes DYNAMIC INDUSTRIES, INC. ("Dynamic"), who, pursuant to LR56.1, respectfully submits this statement of the material facts as to which Dynamic contends that there is no genuine issue to be tried:

1.

Plaintiff, Dario Pinedo, has alleged that he sustained injuries as a result of an accident which occurred on December 9, 1997 during a personnel basket transfer from the M/V WHITE DOVE to the Ship Shoal 224 D platform. He filed suit against the platform owner, Murphy Exploration & Production Company ("Murphy"), and the vessel owner, B & J Martin, Inc. ("B & J Martin").

2.

On the date of the accident, Murphy had a Master Service Contract in effect with Dynamic Industries, Inc. ("Dynamic") and a Time Charter Agreement with the vessel owner, B & J Martin, which contained indemnity provisions in favor of Murphy.

3.

Murphy has filed a Cross Claim against the vessel owner, B & J Martin, seeking indemnity and defense pursuant to the Time Charter Agreement in effect on the date of the accident.

4.

Murphy has filed a Third Party Complaint against Dynamic seeking indemnity and defense pursuant to a Master Service Contract between Murphy and Dynamic dated July 31, 1992.

5.

Pursuant to the Master Service Contract at issue, Dynamic contracted with Murphy to perform fabrication and welding on Murphy's Ship Shoal 224 D platform.

6.

The Ship Shoal 224 D platform is a fixed platform located more than 3 miles off the coast of Louisiana.

7.

Pursuant to the Master Service Contract at issue and at the time of the accident, Dynamic provided a welding crew to install a new fire water system on the Ship Shoal 224 D platform. In addition, the Dynamic crew was performing fabrication and installation of old piping, grating, handrails, etc. on the Ship Shoal 224 D platform.

8.

At the time of the alleged accident, Plaintiff, Dario Pinedo, was employed as a rigger and/or a welder's helper. Plaintiff's primary job responsibilities included assisting the welders.

9.

Plaintiff's accident occurred while he was being transferred via a personnel basket to Murphy's Ship Shoal 224 D platform.

10.

The Master Service Contract at issue is a non-maritime contract.

RESPECTFULLY SUBMITTED:

CRAWFORD & LEWIS
Bank One - North Tower
450 Laurel Street, Suite 1600
Post Office Box 3656
Baton Rouge, LA 70821-3656
Telephone: (225) 343-5290

_____
JAMES C. DONOHUE (#18869)
MARTI OGDEN (#25201)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DARIO PINEDA | CIVIL ACTION NO. 00-0068 |
| VERSUS | |
| MURPHY EXPLORATION & PRODUCTION COMPANY, DYNAMIC INDUSTRIES, INC., M/V WHITE DOVE, ABC INSURANCE COMPANY, DEF INSURANCE COMPANY and XYZ INSURANCE COMPANY | SECTION "J"<br><br>MAGISTRATE 1 |

# MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

Defendant, Dynamic Industries, Inc. ("Dynamic"), respectfully submits the following memorandum in support of its Motion for Partial Summary Judgment seeking dismissal from this litigation.

Murphy Exploration & Production Company ("Murphy") has filed a Third Party Complaint against Dynamic Industries, Inc. ("Dynamic") seeking indemnity and defense pursuant to a Master Service Contract between Murphy and Dynamic dated July 31, 1992. (See attached contract, Exhibit "A"). As a matter of law, the indemnity provision in the Master Service Contract is unenforceable as it is against the public policy of the State of Louisiana and has been declared by the legislature to be absolutely null and void.

The contract at issue is a non-maritime contract. The work performed pursuant to the contract took place on a fixed platform located more than 3 miles off the coast of

8

Louisiana. Pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), the law of the adjacent state (Louisiana) governs. Accordingly, Dynamic respectfully requests that this Honorable Court grant its Motion for Partial Summary Judgment and issue a ruling that Louisiana law governs the claims asserted by Murphy in its Third Party Complaint against Dynamic.

## Facts

This case arises out of an accident which occurred on December 9, 1997 while Plaintiff, Dario Pinedo, was being transferred from the M/V WHITE DOVE via a personnel basket to a fixed platform known as the Ship Shoal 224 D, which is located on the Outer Continental Shelf approximately 85 miles off the coast of Louisiana in the Gulf of Mexico. The Ship Shoal 224 D platform is owned and operated by Defendant, Murphy Exploration & Production Company ("Murphy"). The M/V WHITE DOVE is owned by Defendant, B & J Martin, Inc.

Dynamic had contracted with Murphy to perform fabrication and welding on its platform. Dynamic provided a welding crew to install a new fire water system on the platform. In addition, the Dynamic crew was performing fabrication and installation of old piping, grating, handrail, etc. (See attached time tickets showing work performed by Dynamic, Exhibit "B").

At the time of the accident, Plaintiff, Dario Pinedo, was employed by Dynamic as a rigger and/or a welder's helper. Plaintiff testified that his primary job responsibilities included assisting the welders, pipe-fitters and crane operator on Murphy's platform. He testified that during his employment with Dynamic, there was only one occasion where he assisted in the unloading of pipe from a vessel incidental to his job as a rigger.

Other than that one occasion, plaintiff testified that his work was performed exclusively on the platform.

    The following is pertinent testimony from plaintiff's deposition:

Q:    Can you give me a description, a big picture description, of what it was that Dynamic Services was doing offshore for Murphy on the platforms? In other words, I know you rigged some lines on cranes, but what was the overall service that was provided?

A:    They were installing a fireproof...fiber blind, in case of a fire, it comes on and sprinkles water on the fire. It is like a water sprinkler. They were doing that. They were making repairs on the floor and installing pipes.

***

Q:    So I understand you, Dynamic Industries was installing a water sprinkler system and piping?

A:    And piping.

Q:    And doing some floor repairs?

A:    Exactly.

***

A:    Well, basically I was a helper in everything, because you went from one place to another helping everybody. I was qualified as a top helper. I helped the welder, the pipe fitters and the crane operator.

Q:    So a rigger was a helper?

A:    Yeah. That is what I call it. (See plaintiff's deposition, Exhibit "C", p. 21 – 24).

***

Q:    Along the lines of what he was just questioning you about, the one occasion in which you actually were physically on the WHITE DOVE to unload some pipe. The rest of the time that you worked for Dynamic on the Murphy Oil Ship Shoal platforms, your work consisted of helping pipe fitters and welders do physical work on the platform. Is that correct?

A:    That is correct.

10

> Q: And that is why Dynamic was hired to go out there to work on the platform?
>
> **A: On the platform. Not on the boat.**
>
> Q: They are a welding and fabrication company. Is that correct?
>
> A: That is correct.
>
> Q: They weren't doing any welding and fabrication on the vessel?
>
> A: No.
>
> **Q: So I guess is it fair to say that you worked almost exclusively on the platform?**
>
> **A: Yes.**
>
> **Q: During the time you were working for Murphy Oil as a Dynamic rigger?**
>
> **A: Yes. That would be fair to say. Yes.** (See plaintiff's deposition, Exhibit "C", p. 127 – 129).

As the above testimony demonstrates, Dynamic was contracted by Murphy to perform welding, installation and fabrication work on Murphy's Ship Shoal 224 D platform. All of the work performed by the Dynamic crew, including the plaintiff, was performed on Murphy's platform.

Murphy has filed a third party complaint against Dynamic seeking indemnity and defense pursuant to an indemnity provision contained in its Master Service Contract with Dynamic. Pursuant to the Master Service Contract, Dynamic was to maintain insurance at its sole expense. (See Exhibit "A", Section 9).

Dynamic is an oilfield contractor primarily engaged in providing equipment and labor, such as welders, riggers, electricians, carpenters, sandblasters, and painters, to

11

perform work on fixed platforms.  In the case at hand, welding crews were provided to Murphy to perform fabrication and installation of piping, etc. on Murphy's Ship Shoal 224 D platform.

The Master Service Contract between Dynamic and Murphy is a non-maritime contract, and is therefore governed by the Outer Continental Shelf Lands Act ("OCSLA"), which mandates that the law of the adjacent state (Louisiana) governs any disputes arising out of the contract.  Pursuant to the Louisiana Oilfield Indemnity Act ("LOIA"), indemnity obligations such as those contained in the contract between Murphy and Dynamic are void and unenforceable as against the public policy of the state of Louisiana.  Accordingly, Dynamic requests this court to grant its Motion for Partial Summary Judgment and find that Louisiana law governs the claims asserted by Murphy in its Third Party Complaint against Dynamic.

## Law and Analysis

The following test was originally set forth in Union Texas Petroleum Corp. v. PLT Engineering, 895 F.2d 1043 (5th Cir. 1990) to determine whether or not the Outer Continental Shelf Lands Act ("OCSLA") applies:

(1)   The controversy must arise on a situs covered by OCSLA (ie, the subsoil, seabed, or artificial structures permanently or temporarily attached thereto).

(2)   Federal maritime law must not apply of its own force.

(3)   The state law must not be inconsistent with federal law.

[See also Smith v. Penrod Drilling Corporation, 960 F.2d 456 (5th Cir. 1992)].

**(1)   The controversy between Murphy and Dynamic arises on an OCSLA covered situs.**

Under the first factor, the controversy between Murphy and Dynamic involves a determination of the rights and obligations of the parties under a non-maritime contract to provide services on a fixed platform. The <u>Union Texas Petroleum</u> court stressed that the OCSLA situs requirement is met when the location where a substantial amount of work under the contract is done on a covered situs. Plaintiff, Dario Pineda, as well as the other employees of Dynamic, performed their work on fixed platforms located upon the Outer Continental Shelf.

Plaintiff testified that he worked as a rigger on Murphy's platform. He testified that during his employment with Dynamic, there was only one occasion where he assisted in the unloading of pipe from a vessel incidental to his job as a rigger. Other than that one occasion, plaintiff testified that his work was performed exclusively on the platform.

As plaintiff's deposition testimony demonstrates, Dynamic was contracted by Murphy to perform welding, installation and fabrication work on Murphy's Ship Shoal 224 D platform. All of the work performed by the Dynamic crew, including the plaintiff, was performed on Murphy's platform.

At the precise time of the accident, plaintiff was not performing any work. Instead, he was being transferred via a personnel basket from a vessel to the platform on which he was to perform his work. The Fifth Circuit, in <u>Wagner</u> and <u>Hodgen v. Forest Oil Corp.</u>, 87 F.3d 1512 (5th Cir. 1996), held that OCSLA situs is met when the location where a substantial amount of work under the contract is done on covered situses, i.e, fixed platforms. Accordingly, the situs requirement is met.

**(2)    Federal maritime law does not apply of its own force because the Master Service Contract is non-maritime.**

Under this prong, the issue is whether or not the Master Service Contract between Murphy and Dynamic is maritime. In <u>Hodgen v. Forest Oil Corp.</u>, 87 F.3d 1512 (5th Cir. 1996), the Fifth Circuit recognized that the second prong of the <u>PLT</u> test includes the same analysis as the six factor test set forth in <u>Davis & Sons v. Gulf Oil Corporation</u>, 919 F.2d 313 (5th Cir. 1990) which is used to determine whether or not a contract is maritime. In <u>Hodgen</u>, the Fifth Circuit stated that: "these two inquiries are identical in the context of oilfield indemnity disputes in the OCSLA context, and both belong as a single factor in the three part PLT test".

Those factors are as follows:

(1)    What does the specific work order in effect at the time of the injury provide?

(2)    What work did the crew assigned under the work order actually do?

(3)    Was the crew assigned to work aboard a vessel in navigable waters?

(4)    To what extent did the work being done relate to the mission of that vessel?

(5)    What was the principal work of the injured worker?

The Fifth Circuit has recently analyzed the <u>Davis</u> factors in <u>Wagner v. McDermott, Inc.</u>, 79 F.3d 20 (5th Cir. 1996). In <u>Wagner</u>, the contract at issue was a "blanket service" contract which was followed by later work orders. The contractor provided laborers to perform welding on the McDermott offshore platform. The plaintiff, who was hired to work on that platform, was allegedly injured when he slipped and fell on the deck of a barge as he was walking to the restroom facilities which were

apparently located on that barge. After analyzing the Davis factors, the Fifth Circuit concluded that the contract was not maritime.

**Factor #1:   What does the specific work order in effect at the time of the injury provide?**   In Wagner, the court focused on the primary work which was performed by the plaintiff. The plaintiff's workstation was on the platform. He was hired to perform welding services on the platform.

The present case involves a plaintiff who was hired to work as a welder's helper on a fixed platform on the Outer Continental Shelf. The work order in effect at the time of the accident was to provide workers who were to perform welding and fabrication on a fixed platform. The fact that the plaintiff was hired to perform a substantial amount of his work on a fixed platform supports the conclusion that the Master Service Contract is a non-maritime contract.

**Factor #2:   What work did the crew assigned under the work order actually do?**   In Wagner, the welders were hired to perform welding services on the offshore platform. In the present case, as well, the plaintiff was hired to work on an offshore platform. This fact further supports the conclusion that the Master Service Contract is non-maritime.

**Factor #3:   Was the crew assigned to work aboard a vessel in navigable waters? NO.**   In Wagner, there was no evidence that the crew was assigned to work aboard the derrick barge. Instead, the welders worked exclusively on the platform. The same is true in the present case. The plaintiff was not hired to work on a vessel in navigable waters. He was hired to work exclusively on the platform. Plaintiff testified that during his employment with Dynamic there was only one occasion where he

15

unloaded pipe from a vessel. He testified that he was hired to work on the platform – not the vessel. This supports that the Master Service Contract in non-maritime.

**Factor #4: To what extent did the work being done relate to the mission of that vessel?** This factor is irrelevant in the present case because as stated above, Plaintiff was not assigned to work aboard a vessel. However, even if he did perform some work on a vessel, which he did not, that fact alone would not make the contract maritime.

In Wagner, the court stated the following:

"As most recently stated by the Fifth Circuit a 'contract related to oil and gas exploration and drilling takes on a salty flavor when the performance of the contract is more than incidentally related to the execution of the vessel's mission.' (citations omitted). The Fifth Circuit has also stated that a contract is maritime when the 'contract did not merely touch incidentally on a vessel but specifically focused on the use of a vessel to [perform the work].' In the instant case, the contract, consisting of the work order and the blanket subcontractor's agreement, did not specifically require nor specifically address the supply and use of a vessel for performance of the welding services, rather it required Landry or Capital to provide welders who worked exclusively on a platform. No specific mention of the use of the vessel where the alleged accident occurred was made in either the Blanket Subcontractor's Agreement or call out."

In Wagner, the plaintiff was actually on a vessel at the time of the accident. Despite that fact, the contract was found to be non-maritime. This further supports that the contract is non-maritime.

**Factor #5: What was the principal work of the injured worker?** In <u>Wagner</u>, the principal work of the plaintiff was welding on a fixed platform. The plaintiff in the present case assisted welders with the work performed on the platform. This supports that the contract is non-maritime.

**Factor #6: What work was the injured worker actually doing at the time of the injury?** In <u>Wagner</u>, the court stated as follows: "Wagner was not performing any work pursuant to the contract at the time of his injury, but slipped and fell in the washroom facilities of the barge at the time of his injury. Thus, this factor has little relevance in characterizing the nature of the contract."

The facts in the present case are indistinguishable. The plaintiff in the present case was not performing any work pursuant to the contract at the time of the accident, but was being transferred via a personnel basket to the platform. Accordingly, this factor has little relevance.

After going through the above analysis, the Court in <u>Wagner</u>, concluded that the contract was non-maritime, and that Louisiana law was applicable, specifically the LOIA. For the same reasons provided by the Court in <u>Wagner</u>, the Master Service Contract between Murphy and Dynamic is a non-maritime contract.

(3)   **The state law is not inconsistent with federal law.**

The third factor of the <u>PLT</u> analysis requires that the LOIA not be inconsistent with federal law. Analyzing this factor, the Court in <u>Wagner</u> stated the following:

> "If one views the issue from Landry, Capital, and its insurers' perspective, their potential liability as to McDermott's claims flow from the contract and work order entered into with McDermott in which Wagner was requested to perform and was performing welding services on a ***platform***.

17

Both sides make convincing arguments; however, *the claim which is at issue before this Court* is one for contractual indemnity. The *contract was non-maritime* for welding services on a platform. Consequently, either land based law governs the contract or the OCSLA which adopts Louisiana law as surrogate law governs the contract; under either theory, the LOIA would come into play." Wagner, supra. at p. 1556 - 1557.

The Fifth Circuit's decision in Wagner clearly answers the question before this Court today. That is, the contract at issue is non-maritime, and therefore the general maritime law is not applicable. See also Brennan v. Shell Offshore, Inc., 612 So.2d 929 (La. App. 4 Cir. 1993). Pursuant to the OCSLA, the applicable law is the law of the adjacent state. That law is Louisiana which provides that the indemnity provision contained in the Master Service Contract between Murphy and Dynamic is against public policy and is absolutely null and void.

## Conclusion

Pursuant to the OCSLA, Louisiana law governs the contract between Murphy and Dynamic. Louisiana law provides that indemnity provisions such as the one found in the Master Service Contract between Murphy and Dynamic is against the public policy of Louisiana and is therefore absolutely null and unenforceable.

For the foregoing reasons, Dynamic respectfully requests that this Court grant its Motion for Partial Summary Judgment and issue a ruling that Louisiana law governs the claims asserted by Murphy in its Third Party Complaint against Dynamic.

RESPECTFULLY SUBMITTED:

CRAWFORD & LEWIS
Bank One - North Tower
450 Laurel Street, Suite 1600
Post Office Box 3656
Baton Rouge, LA 70821-3656
Telephone: (225) 343-5290

_____
JAMES C. DONOHUE (#18869)
MARTI OGDEN (#25201)


# CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been forwarded by facsimile transmission and mailed, postage prepaid, to all counsel of record this 17th day of July, 2001.

_____
JAMES C. DONOHUE

G:\UNIC\1936.057\Pleadings\MSJ.doc

19

**SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED**