

RECEIVED
JAN - 8 2002
CHAMBERS OF
U.S. DISTRICT JUDGE
CARL J. BARBIER

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 JAN 11  AM 11: 00

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARIO PINEDA** | **CIVIL ACTION** |
| **VERSUS** | **NO.  00-0068** |
| **MURPHY EXPLORATION & PRODUCTION COMPANY, DYNAMIC INDUSTRIES, INC., M/V WHITE DOVE,** | **SECTION J** |
| **ABC INSURANCE COMPANY, DEF INSURANCE COMPANY and XYZ INSURANCE COMPANY** | **MAG. 1** |

## PRE-TRIAL ORDER

## 1.

## DATE OF PRE-TRIAL CONFERENCE

A Pre-Trial Conference will be held at 9:00 a.m. on Thursday, January 10, 2002 before the Honorable District Judge Carl J. Barbier.

DATE OF ENTRY
JAN 1 1 2002

1



**2.**

## APPEARANCE OF COUNSEL

**A.**    **FOR PLAINTIFF, DARIO PINEDA:**
W. Patrick Klotz (Bar #17877)
KLOTZ & EARLY
2609 Canal Street, Fourth Floor
New Orleans, Louisiana 70119
Telephone: (504)821-9900
Facsimile: (504)821-8080

**B.**    **FOR DEFENDANT/CROSS-CLAIMANT, MURPHY EXPLORATION &PRODUCTION COMPANY:**
James H. Daigle (Bar #4455)
Thomas A. Porteous (Bar #27039)
LEMLE & KELLEHER, L.L.P.
Pan-American Life Center
601 Poydras Street, Suite 2100
New Orleans, Louisiana  70130
Telephone:  (504) 586-1241
Facsimile:  (504) 584-9142

**C.**    **FOR DEFENDANT/CROSS-DEFENDANT/COUNTER-CLAIMANT, B&J MARTIN, INC.:**
Jefferson R. Tillery, T.A. (#17831)
Etienne Balart (#24951)
JONES, WALKER, WAECHTER,
POITEVENT, CARRERE & DENEGRE
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana  70170-5100
Telephone:  (504) 582-8000
Facsimile:  (504) 582-8010

2

**D.    FOR THIRD PARTY DEFENDANT, DYNAMIC INDUSTRIES, INC.:**
James C. Donohue (#18869)
Marti Ogden (#25201)
CRAWFORD LEWIS
Bank One - North Tower
450 Laurel Street, Suite 1600
Post Office Box 3656
Baton Rouge, LA 70821-3656
Telephone:  (225) 343-5290
Facsimile: (225) 383-5508

**E.    FOR INTERVENOR, EAGLE PACIFIC INSURANCE COMPANY:**
H. Lebas, T.A. (#23185)
Jeff R. Rytlewski (#25231)
100 E. Vermilion Street, Suite 201
Lafayette, Louisiana  70501
Telephone:  (337) 291-2500
Facsimile:  (337) 291-2505

**3.**

## <u>DESCRIPTION OF THE PARTIES</u>

A Petition for Damages was filed by Plaintiff, Dario Pineda, in the Civil District Court, Parish of Orleans against Murphy Exploration & Production Company, Dynamic Industries, Inc., The *M/V WHITE DOVE* and ABC; DEF; and XYZ Insurance Companies. Plaintiff was employed by Dynamic Industries, Inc. as a rigger whose job duties were performed on platforms owned and operated by Murphy Exploration & Production Company in Block 224, Ship Shoal area, Gulf of Mexico on the Outer Continental Shelf.

3

He was injured on or about December 9, 1997 while being transferred by crane and personnel basket from the stern deck of the *M/V WHITE DOVE* to Platform D, Ship Shoal 224.

Murphy Exploration & Production Company removed the case to the United States District Court, Eastern District of Louisiana, filed an Answer, and filed a Third Party Complaint against Dynamic Industries, Inc. seeking contribution and indemnity under the terms of a certain Master Service Agreement dated July 31, 1992, which was attached to the Third Party Complaint, together with legal interest, attorney's fees and costs.

Dynamic Industries, Inc.(Third Party Defendant) is a Louisiana corporation who contracted with Murphy Exploration & Production Company ("Murphy") to perform fabrication and welding on Murphy's Ship Shoal 224 D platform. Dynamic provided a welding crew to install a new fire water system on the platform. In addition, the Dynamic crew was performing fabrication and installation of old piping, grating, handrail, etc. on Murphy's Ship Shoal 224 D platform. Dynamic Industries, Inc. filed Answer to the Third Party Complaint asserting the invalidity of the indemnity provisions of the Master Service Contract under the terms of the Louisiana Oil field Indemnity Act (a/k/a LOIA, La. R.S. 9:2780).

Plaintiff filed a First Supplemental and Amending Complaint against B&J Martin, Inc., the owner and/or operator and/or owner *pro hac vice* of the *M/V WHITE DOVE*.

4

B&J Martin, Inc. filed Answer.

Murphy Exploration & Production Company filed a Cross-Claim against B&J Martin, Inc. seeking contribution and indemnity under the terms of a certain Master Service Agreement dated July 31, 1992, which was attached to the Cross-Claim, together with legal interest, attorneys' fees and costs.

Plaintiff voluntarily dismissed Dynamic Industries, Inc. after confecting an 8(i) Settlement under the LHWCA.

Eagle Pacific Insurance Company, the LHWCA carrier of Dynamic Industries, Inc. filed a Complaint of Intervention seeking reimbursement for compensation and medical benefits paid to or on behalf of Dario Pineda pursuant to LHWCA.

**4.**

## BASIS OF JURISDICTION

Jurisdiction against Murphy Exploration & Production Company is based on the Outer Continental Shelf Lands Act, 43 U.S.C. §1331, *et seq.* and the General Maritime Law. Jurisdiction against B&J Martin, Inc. is based on the General Maritime Law for vessel negligence under 905(b) of the LHWCA.

Defendant, Murphy Exploration & Production Company, asserts this Court has ancillary jurisdiction over its contractual claims for defense, indemnity and attorney fees

against B&J Martin, Inc. and Dynamic Industries, Inc., whether under Louisiana law via 43 U.S.C. §1331 or the General Maritime Law.

## 5.

## PENDING OR CONTEMPLATED MOTIONS

There are no pending motions. Plaintiff contemplates filing motions *in limine* prior to trial. Defendants Murphy Exploration & Production Company and B&J Martin, Inc., anticipate filing motions *in limine* to strike certain of the expert economic testimony which Plaintiff plans on offering.

## 6.

## SUMMARY OF MATERIAL FACTS

A brief summary of the material facts claimed by:

## A.    PLAINTIFF, DARIO PINEDA:

On December 9, 1997, plaintiff Dario Pineda was employed as a rigger by Dynamic Industries, Inc. On that date, plaintiff and other Dynamic Industries employees were being transported from a living quarters platform to a platform upon which the crew was to work that day. Murphy supplied an "alleged" utility boat, the *M/V WHITE DOVE,* pursuant to a time charter with B&J Martin. B&J Martin supplied the captain and crew of the *M/V WHITE DOVE.*

6

Upon arrival on December 9, 1997 at the work platform, the Murphy company-man and crane-operator utilized a swing-rope transfer to disembark from the *M/V WHITE DOVE* onto the work platform. The company-man and crane-operator, Mr. Don Dixon, a Murphy Employee then climbed up into a the crane cab which was located on the work platform. After Murphy's crane operator lowered the line, the crew of the *M/V WHITE DOVE* connected a personnel basket to the end of the crane line and attempted to transfer plaintiff Dario Pineda and three other Dynamic Industries employees via personnel basket from the deck of the *M/V WHITE DOVE* onto the work platform. The seas were rough, and heavy swells which existed at the time, together with the negligent crane operation by Mr. Dixon and the negligent captaining of the vessel by the B&J Martin captain, resulted in the personnel basket being slammed to the deck of the vessel causing Mr. Pineda and other Dynamic crew members to fall onto the deck and onto equipment located on the deck. Mr. Pineda sustained injuries to his back and other parts of his body.

Plaintiff submits that Murphy's crane operator was negligent in his operation of the crane. B&J Martin was negligent in that it failed to provide a vessel which was suitable for it's intended purpose and further failed to provide a competent crew. The crew was rendered incompetent by their failure to properly position the boat, hold the vessel steady in high seas, conducting the operation in light of the inclement weather, failing to

properly utilize hand signals, and failure to use a tag line. Murphy and B&J Martin were also negligent in attempting to conduct the personnel basket transfer in inclement weather. The combined negligence of the Murphy and B&J Martin crew, together with the unseaworthiness of the vessel caused damage to plaintiff, Dario Pineda.

Following the accident, plaintiff was treated by a company doctor who released him to light duty. He was then treated by a physician of his choosing, Dr. Raul Diaz for over a year on a conservative basis which included anti-inflammatory medication and epidural injections. Plaintiff was later treated by Dr. F. Allen Johnson at which time diagnostic testing in the form of an EMG revealed left S-1 radiculopathy. Plaintiff has not sought any further medical care.

Although Plaintiff has had prior back injury, he nonetheless continued to rm heavy manual labor through the date of the accident made basis of this claim. At the time of his accident, Mr. Pineda was earning (according to a stipulation by his employer) $630.00 per week with an annualized income of approximately $33,000.00 per year. Thus, for the time period of December 9, 1997 through the fall of 2001, plaintiff has lost earnings of approximately $115,000.00.

**B.    DEFENDANT/CROSS-CLAIMANT/THIRD PARTY PLAINTIFF, MURPHY EXPLORATION & PRODUCTION COMPANY:**

On or about December 9, 1997, plaintiff was employed as a rigger by Dynamic Industries, Inc. His job duties required him to work on several platforms owned and operated in Ship Shoal 224, Gulf of Mexico, on the Outer Continental Shelf. He also ate and slept on a platform in that block. On the date in question, plaintiff and his fellow Dynamic Industries, Inc. employees were being transported from the platform containing their living quarters to Platform D, Ship Shoal 224. The transportation was provided by the utility boat, *M/V WHITE DOVE*, which was time chartered by Murphy Exploration & Production Company and working pursuant to a Master Service Agreement dated July 31, 1992. Plaintiff claims he was injured while he was being lifted from the stern deck of the boat to the platform via crane and personnel basket.

The plaintiff's Petition for Damages alleges the personnel basket swung into equipment which was loaded on the stern deck of the *M/V WHITE DOVE,* causing plaintiff to fall on the back deck of the boat after which the personnel basket landed on his body (version 1). In plaintiff's Pre-Hearing Statement before the U.S. Department of Labor, plaintiff alleges the personnel basket on the crane crashed (version 2). In his first deposition, plaintiff alleges that while he was standing on the personnel basket the boat went down and the basket remained in the air when the bat came back up and hit the basket causing plaintiff to fall on top of a manifold (version 3). The Employer's First Report of Injury, LS-202,

9

dated January 20, 1998 submitted to the Department of Labor by Dynamic Industries, Inc. states plaintiff was entering a personnel basket on a crew boat when an ocean swell caused basket to be lifted off the deck and strike equipment on deck causing plaintiff to fall to the deck (version 4). The narrative description of plaintiff's accident as he related it to Archie Coulon, Murphy's Head Gauger, and contained in Paragraph 38 of Murphy's Accident Report stated that while getting on the personnel basket, the basket swung into equipment loaded on the back deck of the *M/V WHITE DOVE* after a swell caused the basket to be lifted up about four feet (version 5). In his second deposition, plaintiff stated that the *M/V WHITE DOVE* dropped four feet below the basket and then rose four feet and struck the basket (version 6).

Regardless which version of plaintiff's alleged accident is believed, defendant, Murphy Exploration & Production Company, denies that it or anyone for whose acts it is responsible was in any way negligent. Dynamic Industries, Inc. was negligent in failing to properly train plaintiff and his supervisor in the proper way to ride personnel baskets. B&J Martin, Inc. provided a vessel which was not suitable for its intended use as an offshore utility boat and provided an incompetent crew, which failed to properly position the boat, failed to hold her steady in the seas, failed to properly hand signal the crane operator, and failed to use the tag line to hold the basket steady as it was being lifted.

10

Plaintiff was also negligent for failing to keep a proper watch out for his own safety.

Following the alleged accident of December 7, 1997, plaintiff first sought treatment on December 11, 1997 from Dr. Charles C. Anastasio. He was diagnosed with a lumbosacral strain and released to light-duty. On January 12, 1998, only one month after the alleged accident, plaintiff was discharged to regular duty by Dr. Anastasio with a healed lumbar strain.

Mr. Pineda was then incarcerated in a Jefferson Parish jail for six months. One can only surmise what may have happened to Mr. Pineda during his incarceration. Upon discharge from jail, he sought treatment from a Dr. Raul R. Diaz, orthopedic surgeon, beginning June 26, 1998 and continuing through July 16, 1999. He was treated conservatively without invasive testing or surgery. His treatment consisted of anti-inflammatory medicines and epidural injections. He has not been under treatment since. Apparently, he underwent an independent medical examination by Dr. Robert A. Steiner on December 7, 1999 at the request of Eagle Insurance Group. The examination and testing demonstrated plaintiff's back and extremities were normal. Dr. Steiner opined plaintiff had reached maximum medical improvement and could return to work. By history, plaintiff told Dr. Steiner's office his accident occurred when he fell out of a personnel basket

approximately 20 feet onto a pipe rack (version 7).

Plaintiff's first deposition was taken in May 2000. At that time, he denied he had worked since his alleged accident of December 9, 1997.

On June 4, 2001, plaintiff gave a second deposition. At the deposition, plaintiff stated that since his first deposition of May 30, 2000, he had not worked, had sought no employment and made no efforts to work. Specifically, Mr. Pineda denied he had worked for Illumilex and Basic Industries in 1999 or 2000. In fact, plaintiff worked for Basic Industries from January 2, 2000 to April 23, 2000 earning $6,415.34. On November 18, 1999, plaintiff underwent a pre-employment physical by Dr. Steven Holmes and was approved for full-work duties as an insulation worker. In association with his application for employment, plaintiff completed a questionnaire in which he stated he had never had an on the job injury, and did not then have and had never had physical problems such as he reported to Dr. Diaz. Specifically, plaintiff:

1.    denied he had ever had any injury on the job;

2.    denied he was taking any prescribed medication;

3.    denied ever having been diagnosed with an injury or physical condition for which he was not then seeking treatment;

4.    denied that he had ever injured or had trouble with his back or had ever

12

received or made claim for worker's compensation; and

     5.     stated he had not lost any time from work in the last five years due to injury or illness.

Plaintiff signed a declaration which stated, "I...declare that I have had no injury...other than as specifically noted herein. I certify that all information is true and accurate..."

Plaintiff's Tax Return and Social Security Earnings records show earnings at or below the minimum wage from 1989 to 1997.

Plaintiff did not work in 1998. Mr. Pineda's personnel file with Basic Industries, Inc. shows he earned $6,415.34 from January 2, 2000 to April 23, 2000. Annualized this amounts to $19,200.00. If plaintiff were to obtain work performing manual labor or a relatively sedentary job earning the minimum wage of $5.15, working a 40 hour week, his annual income would be $10,300.00 using a 50 week work year. Thus, plaintiff's past wage loss until he was declared MMI by Dr. Steiner (giving plaintiff the entire benefit of the doubt and pretermitting the fact that Dr. Anastasio discharged him to work in January 1998, before plaintiff was incarcerated) plaintiff's best case analysis is about $10,000 in past wage loss and no future loss of wages. A minor back strain resolved is at best worth $10,000 to $15,000.

At a settlement conference in Magistrate Shushan's office on Tuesday, July 17, 2001, plaintiff's counsel revealed for the first time that plaintiff has been under treatment by a Dr. F. Allen Johnston from June 21, 2000 to October 4, 2000. Plaintiff gave Dr. Johnston a history of having fallen approximately 10-15 feet from a personnel basket to a boat. (Version 8) He told Dr. Johnston he had not worked since the accident. Dr. Johnston had an EMG performed which Dr. Johnston opined showed some mild left S1 radiculopathy and recommended plaintiff see Dr. Kenneth Vogel for a surgical consult. No such consult occurred. Dr. Vogel's records did reveal, however, that plaintiff had been Dr. Vogel's patient in 1992-1994 as the result of a motorcycle accident on Canal Street for which plaintiff filed suit and claimed permanent injuries. Plaintiff underwent an MRI in July, 1992, a lumbar facet arthrogram in July, 1992 and was recommended for lumbar surgery at Mercy Hospital in August 1992. Plaintiff was diagnosed with lumbar facet arthropathy and was scheduled for a lumbar medial branch neurotomy. Those medical records revealed yet a third lawsuit in which plaintiff claimed he suffered permanent and disabling injuries.

Of considerable interest and of some note, records from the Department of Immigration and Naturalization Services, Department of Justice, reveal that on December 7, 2000, a Warrant of Removal/Deportation was entered against Mr. Pineda mandating he be removed from the United States to Honduras not to return for a period of twenty years. The

reason for the Warrant of Removal/Deportation was that Mr. Pineda had illegally re-entered the country, and was in violation of a prior removal order entered against him by the INS. Subsequent to the December 7, 2000 Warrant of Removal/Deportation, Mr. Pineda was removed from the United States on January 30, 2001 to San Pedro Sola, Honduras on Taca Flight Number 411.  In spite of being removed on January 30, 2001, Mr. Pineda, in blatant disregard for this second removal order, re-entered the United States illegally and attended not one, but two separate depositions in New Orleans, Louisiana as part of this litigation. On May 30, 2000 and June 4, 2001, Mr. Pineda gave sworn testimony in this matter all the while in violation of the second removal order mandating he be removed from the United States not to return for a period of twenty years.  Mr. Pineda's current whereabouts are unknown.

### C.    DEFENDANT/CROSS-DEFENDANT B & J MARTIN, INC.:

B&J Martin, Inc. adopts the Summary of Material Facts offered by Murphy Exploration & Production company subject to the following additions and/or exceptions.  On December 9, 1997, Dario Pineda was involved in a personnel basket transfer to the Murphy Ship Shoal 224, located in the Gulf of Mexico on the Outer Continental Shelf.  After having been advised of the prevailing weather conditions, Murphy Exploration hands and Dynamic hands decided to proceed with personnel basket transfer to the 224-D platform.  Murphy

crane operator Don Dixon completed a successful rope swing transfer to the platform. Under the supervision of his foreman, Derek DuBois, Dario Pineda entered a personnel basket located on the stern of the B&J Martin vessel *M/V WHITE DOVE*. This vessel had been in use by Murphy Exploration and had been deemed acceptable for the task at hand. With the exception of Pineda, none of the Dynamic hands claimed to have been injured. No other testimony supports Pineda's version.

B&J Martin vehemently contests the versions of the events as presented by Dario Pineda. In fact, Pineda has presented several different versions of the event, none of which have been corroborated by any independent source. In fact, the most credible testimony offered to date, that of Murphy crane operator, Don Dixon, was that a swell in the Gulf of Mexico caused the basket to lift up a matter of one-to-two feet from the deck of the vessel and then land back on the vessel's deck. According to Dixon, he did not see anyone fall off the basket, nor did he see anyone fly into equipment. Pineda's conflicting versions are a figment of his imagination and, combined with his multiple inconsistencies and lies in subsequent events, do not bear scrutiny. Despite having what he now contends to be a permanent and disabling injury, Pineda resumed work that day without restriction.

In his pursuit for money damages from the Defendant, Pineda has lied and/or fabricated events at every turn in order to enhance his claims. Pineda has lied about (1) his

medical condition; (2) his work status; (3) his past medical history; and (4) his current status as an illegal alien. Defendants quite frankly are unsure as to what other lies may have been perpetrated in furtherance of Pineda's claim. Simply put, Pineda is a fraud. His long history of abusing the United States court system in an effort to obtain money damages for personal injury, combined with the multitude of lies in this claim, as well as the fact that Pineda is a convicted criminal and illegal alien subject to an order of deportation, is more than ample proof that Pineda has perpetrated a fraud upon these respective defendants. B&J Martin fully intends to pursue its claim of abuse of process and fraud against Pineda.

### D.    THIRD PARTY DEFENDANT, DYNAMIC INDUSTRIES, INC.:

Murphy Exploration & Production Company ("Murphy") has filed a Third Party Complaint against Dynamic Industries, Inc. ("Dynamic") seeking indemnity and defense pursuant to a Master Service Contract between Murphy and Dynamic dated July 31, 1992. As a matter of law, the indemnity provision in the Master Service Contract is unenforceable as it is against the public policy of the State of Louisiana and has been declared by the legislature to be absolutely null and void.

The contract at issue is a non-maritime contract. The work performed pursuant to the contract took place on a fixed platform located more than 3 miles off the coast of Louisiana. Pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), the law of the

17

adjacent state (Louisiana) governs.

This case arises out of an accident which occurred on December 9, 1997 while Plaintiff, Dario Pineda, was being transferred via a personnel basket to a fixed platform known as the Ship Shoal 224 D, which is located on the Outer Continental Shelf approximately 85 miles off the coast of Louisiana in the Gulf of Mexico. The Ship Shoal 224 D platform is owned and operated by Defendant, Murphy Exploration & Production Company ("Murphy").

Dynamic had contracted with Murphy to perform fabrication and welding on its platform. Dynamic provided a welding crew to install a new fire water system on the platform. In addition, the Dynamic crew was performing fabrication and installation of old piping, grating, handrail, etc.

At the time of the accident, Plaintiff, Dario Pineda, was employed by Dynamic as a rigger / welder's helper. Plaintiff's primary job duties including assisting the welders and pipe fitters.

Plaintiff has alleged that on or about December 9, 1997 he sustained injuries when a personnel basket being used to lift plaintiff onto the platform swung into equipment that was loaded on the back of a vessel, the M/V White Dove, causing plaintiff to fall onto the deck of the vessel.

Dynamic is an oil field contractor primarily engaged in providing equipment and

18

labor, such as welders, riggers, electricians, carpenters, sandblasters, and painters, to perform work on fixed platforms. The Master Service Contract between Dynamic and Murphy is a non-maritime contract, and is therefore governed by the Outer Continental Shelf Lands Act ("OCSLA"), which mandates that the law of the adjacent state (Louisiana) governs any disputes arising out of the contract. Pursuant to the Louisiana Oil field Indemnity Act ("LOIA"),indemnity obligations such as those contained in the contract between Murphy and Dynamic are void and unenforceable as against the public policy of the state of Louisiana.

### E.    INTERVENOR, EAGLE PACIFIC INSURANCE COMPANY:

Eagle Insurance is the workers' compensation carrier for the plaintiff's employer and, as such, has paid to or on behalf of the plaintiff medical and indemnity benefits under the Longshore and Harbor Workers Compensation Act. The LHWCA gives Eagle the right to be subrogated on a first dollar basis to the rights of the plaintiff to recover from the defendants to the extent of the payments made by Eagle.

### 7.

### UNCONTESTED MATERIAL FACTS

1.    On or about December 9, 1997, Dario Pineda was employed as a rigger by Dynamic Industries, Inc.

2.    Plaintiff's work as a rigger was performed on fixed platforms,

19

including Platform D, Ship Shoal 224, Gulf of Mexico on the Outer Continental Shelf offshore the Coast of Louisiana.

   3. The *M/V WHITE DOVE* was on or about December 9, 1997 operated by B&J Martin, Inc.

   4. Eagle Pacific Insurance Company was on or about December 9, 1997 the LHWCA carrier of Dynamic Industries, Inc.

   5. On or about December 9, 1997, plaintiff was a passenger on the *M/V WHITE DOVE* being transported from the Murphy living quarters platform to Platform D.

   6. Plaintiff's date of birth is November 20, 1968.

   7. Pursuant to the Master Service Contract Master Service Contract between Murphy and Dynamic dated July 31, 1992, Dynamic contracted with Murphy to perform fabrication and welding on Murphy's Ship Shoal 224 D platform.  The Ship Shoal 224 D platform is a fixed platform located more than 3 miles off the coast of Louisiana.

   8. Pursuant to the Master Service Contract between Dynamic and Murphy, Dynamic provided a welding crew to install a new fire water system on the Ship Shoal 224 D platform.  In addition, the Dynamic crew was performing fabrication and installation of old piping, grating, handrails, etc. on the Ship Shoal 224 D platform.

   9. At the time of the alleged accident, Plaintiff, Dario Pinedo, was

employed as a rigger and/or a welder's helper. Plaintiff's primary job responsibilities included assisting the welders.

10.    At the time of the accident, Dario Pineda was an employee of Dynamic Industries and was in the course and scope of his employment.

11.    At the time of the accident, Dynamic Industries was insured under a policy of workers' compensation insurance with Eagle Pacific Insurance Company.

## 8.

## CONTESTED ISSUES OF FACT

The following is a single listing of the contested issues of fact submitted by all counsel:

1.    Whether the crew of the *M/V WHITE DOVE* was negligent.

2.    Whether the Murphy crane operator was negligent and whether his negligence was a proximate cause or a cause-in-fact of plaintiff's alleged accident.

3.    Whether the *M/V WHITE DOVE* was suitable for her intended use as a utility boat in an offshore environment.

4.    The nature and extent of the seas, wind, and visibility on the morning of December 9, 1997.

21

5.    The nature and extent of visibility available to the Captain of the *M/V WHITE DOVE* while operating the vessel from the stern controls on or about December 9, 1997.

6.    The nature and extent of communications, whether by radio or hand signals, between the Murphy crane operator and the crew of the *M/V WHITE DOVE.*

7.    The use of the tag line on the personnel basket by the *M/V WHITE DOVE* deckhand on the stern deck of the boat during the transfer in question.

8.    Whether the crew of the *M/V WHITE DOVE* was negligent and whether their negligence was a proximate cause or a cause-in-fact of plaintiff's alleged accident.

9.    The percentage of fault to be allocated among plaintiff, Murphy Exploration & Production Company, B&J Martin, Inc. and Dynamic Industries, Inc.

10.    The nature and extent, if any, of plaintiff's alleged injuries, pain and suffering, disability, and past and future wage loss.

11.    Whether plaintiff sustained an accident on or about December 9, 1997, while being transferred from the stern deck of the *M/V WHITE DOVE* to Platform D.

12.    Whether plaintiff was negligent and whether his negligence was a proximate cause or a cause-in-fact of his alleged accident.

13.    Whether the Murphy crane operator was negligent and whether his

22

negligence was a proximate cause or a cause-in-fact of plaintiff's alleged accident.

14.    Whether the *M/V WHITE DOVE* was suitable for her intended use as a utility boat in an offshore environment.

15.    The nature and extent of the seas, wind, and visibility on the morning of December 9, 1997.

16.    The nature and extent of visibility available to the Captain of the *M/V WHITE DOVE* while operating the vessel from the stern controls on or about December 9, 1997.

17.    The nature and extent of communications, whether by radio or hand signals, between the Murphy crane operator and the crew of the *M/V WHITE DOVE.*

18.    The use of the tag line on the personnel basket by the *M/V WHITE DOVE* deckhand on the stern deck of the boat during the transfer in question.

19.    Whether the crew of the *M/V WHITE DOVE* was negligent and whether their negligence was a proximate cause or a cause-in-fact of plaintiff's alleged accident.

20.    Whether plaintiff's direct supervisor and Dynamic Industries, Inc. were negligent in regards to insufficient training, hand signals, and supervision of the transfer and whether their negligence was a proximate cause or a cause-in-fact of plaintiff's alleged accident.

21.    The percentage of fault to be allocated among plaintiff, Murphy

Exploration & Production Company, B&J Martin, Inc. and Dynamic Industries, Inc.

   22. Whether plaintiff sustained any injuries on or about December 9, 1997 while transferring to Platform D.

   23. The nature and extent, if any, of plaintiff's alleged injuries, pain and suffering, disability, and past and future wage loss.

   24. Whether Eagle Pacific Insurance Group mistakenly entered into an 8(i) Settlement under the LHWCA under the facts and circumstances of the case.

   25. Whether plaintiff has given perjurious testimony regarding his pre and post-accident work and recreational activities and medical treatment.

   26. The sporadic work history and earnings record of plaintiff prior to and subsequent to his alleged accident.

   27. Whether plaintiff is entitled to past and/or future wage loss damages due to his deportation by the Department of Immigration and Naturalization Services.

   28. Whether plaintiff was released to light-duty on December 22, 1997, and regular-duty on January 12, 1998, by Dr. Anastasio at the Belle Chasse Medical Services and was found to have reached MMI according to Dr. Robert Steiner on December 7, 1999.

   29. Whether plaintiff did not work in early 1998 because he was incarcerated.

30.    Whether plaintiff's treatment by Dr. Raul Diaz from July 28, 1998 until March, 1999 was necessary or related to the alleged accident in question.

31.    Whether B&J Martin, Inc. breached an implied warranty of workmanlike performance owed to Murphy Exploration & Production Company requiring indemnity and/or must indemnify Murphy Exploration & Production Company under the terms and conditions of the Master Service Agreement dated July 31, 1992.

32.    Whether the B&J Martin, Inc./Murphy Exploration & Production Company Master Service Agreement dated July 31, 1992, governing the Time Charter of the *M/V WHITE DOVE* dated November 5, 1997, is a maritime contract governed by the General Maritime Law and whether Murphy Exploration & Production Company is entitled to indemnity thereunder.

33.    Whether Murphy Exploration & Production Company is entitled to indemnity from Dynamic Industries, Inc. pursuant to the Master Service Agreement dated July 31, 1992, or whether such indemnity is prohibited under the Louisiana Oil field Indemnity Act.

34.    Whether Murphy Exploration & Production ever objected to the use of the *M/V WHITE DOVE* as a utility boat for the Ship Shoal 224 cluster of platforms;

35.    Whether the Murphy crane operator was negligent and whether his negligence was a proximate cause or cause-in-fact of Pineda's alleged accident.

25

36.    Whether Dario Pineda's status as an illegal alien prevents him from returning to work within the United States.

37.    All factual issues relating to the work performed by Dynamic which are relevant to the legal issue of whether or not Louisiana law applies to the third party claims filed by Murphy against Dynamic.

38.    All factual issues relating to the negligence and fault of Murphy.

39.    Whether as a result of the claimed accident, Eagle Pacific Insurance Company has paid Longshore and Harbor Workers' Compensation payments totaling $38352.81 as of April 26, 2000, including $10,212.81 for medical treatment of the plaintiff, Dario Pineda, and an additional $28,140.00 paid in consideration of a full and final settlement of Dario Pineda's Longshore and Harbor Workers' Compensation Act claims against Eagle Insurance Company and Dynamic Industries.

40.    Whether the plaintiff has agreed to protect Eagle Insurance Company's lien out of the proceeds of any judgment or settlement rendered or entered into in this action, as set forth in the documents memorializing the settlement of the plaintiff's Longshore and Harbor Workers' Compensation Act claims.

41.    The fair market value of the *M/V WHITE DOVE.*

42. Whether Plaintiff was, at all times pertinent, a resident of Jefferson Parish;

26

Murphy Exploration & Production Company has its principal place of business in Orleans Parish.

B&J Martin, Inc. is a Louisiana corporation with its principal place of business in Galliano,

Louisiana.

43.    Whether on or about May 30, 2000 and June 4, 2001 Dario Pineda

gave two depositions in New Orleans, Louisiana while subject to a order of removal placed on

him by the Department of Immigration and Naturalization Services mandating that Mr. Pineda

be removed from the United States for a period of twenty years.

**9.**

**CONTESTED ISSUES OF LAW**

The following is a single listing of the contested issues of law submitted by all

counsel:

1.    Those implicit in the contested issues of fact.

2.    The application of *Fontenot v. Dual Drilling*, 179 F.3d 969 (5th

Cir. 1999).

3.    The applicability of *Smith v. Southern Gulf Marine Company*, 791

F.2d 416 (5th Cir. 1986).

4.    The applicability of *Tarlton v. Exxon*, 688 F.2d 973 (5th Cir. 1982).

5.    The applicability of *Gaspard v. Offshore Crane and Equipment,*

27

*Inc.,* 106 F.3d 1232 (5th Cir. 1997), *cert den.* 118 S.Ct. 691.

6.      The applicability of *Hogden v. Forrest Oil Corp.*, 115 F.3d 358 (5th Cir. 1997).

7.      The applicability of *Sigrid Brumme vs. Immigration and Naturalization Service, Department of Justice, et al*, 2001 W.L. 1562086 (Fifth Circuit 2001).

8.      Whether Murphy Exploration & Production Company may recover its defense costs from Dynamic Industries, Inc. despite the LOIA in circumstances where the former is found free of fault.

9.      Whether the intervention by the Workman's Compensation carrier is illegal/null and void in view of the fact that it paid a debt not owed.

10.     Whether the intervention is illegal/null in light of the waiver of subrogation.

11.     Whether Dario Pineda can recover for future lost wages of any sort;

12.     Whether Dario Pineda has engaged in an abuse of process and/or fraud in connection with his claims;

13.     Whether the intervention by the workmen's compensation carrier is waived due to contractual language contained in the contract between its insured Dynamic Industries, and Murphy Exploration & Production Company;

14.    Whether Murphy is entitled to recover defense and indemnity from B&J Martin under the terms of the Contract and whether or not the Contract which serves as the basis of Murphy's claim is a clear and express expression of an intent to indemnify Murphy for a claim by an employee of Murphy's subcontractor;

15.    Whether the Master Service Contract between Dynamic and Murphy is a non-maritime contract.

16.    Whether Louisiana law applies to the third party claims filed by Murphy against Dynamic.

17.    Whether B&J Martin is entitled to limit its liability to the value of the *M/V WHITE DOVE.*

### 10.

### EXHIBITS

The following is a list and description of exhibits each party intends to introduce at trial:

**A.    BY PLAINTIFF DARIO PINEDA:**

1.    Plaintiff's employment records with Dynamic Industries, Inc.

2.    Dynamic Industries, Inc. Accident Report.

3.    Photographs and video film of the *M/V WHITE DOVE.*

29

4.    Boat logs of *M/V WHITE DOVE.*

5.    B&J Martin/*WHITE DOVE* Daily Master's logs

6.    Specifications of *M/V WHITE DOVE.*

7.    B&J Martin Safety Meeting Reports for 7/6/97 – 12/27/97.

8.    B&J Martin Safety Manual.

9.    Murphy Exploration & Production Company Accident Report dated 12/9/97.

10.    Murphy Exploration & Production Company Summary of Operations for Ship Shoal 224-A for 12/8/97 – 12/12/97.

11.    Murphy Exploration & Production Company Progress Reports for Ship Shoal 224 from 11/24/97 – 12/31/97.

12.    Record of plaintiff's LHWCA Claim and Settlement.

13.    Employer's First Report of Injury or Occupational Illness, Form LS-202 dated 1/20/98 filed by Dynamic Industries, Inc.

14.    Dario Pineda's Federal Tax Returns.

15.    Certificate of Inspection from the United States Coast Guard regarding the *M/V WHITE DOVE* dated February 5, 1997.

16.    Certificate of Documentation from the United States Coast Guard

regarding the *M/V WHITE DOVE* dated February 3, 2000.

17.    Personnel file of Thomas D. Goughehour from employer, B&J Martin, Inc.

18.    Report of Marine Accident, Injury or Death from the United States Coast Guard regarding the *M/V WHITE DOVE,* date of accident 9/9/98.

19.    Report of Marine Accident, Injury or Death from the United States Coast Guard regarding the *M/V WHITE DOVE* dated 1/7/99.

20.    Any and all of plaintiff's medical records relating to the alleged accident in question.

21.    Medical records of Dr. F. Allen Johnston in regards to his examination and treatment of Dario Pineda.

21.    Any and all depositions taken in this case, including all attachments;

22.    Any and all exhibits attached to any deposition.

23.    Any and all safety documentation, including but not limited to manuals, instructions, Safety Meeting Minutes, policies, procedures, videotapes;

24.    Any and all relevant charts, maps, drawings, sketches, diagrams, models or other graphic representations pertaining to the alleged accident;

25.    Any and all relevant photographs;

26. Plaintiff's wage records.

27. All medical records on plaintiff;

28. Any and all accident reports for the date of accident;

29. Any and all weather reports for the time period of the accident;

30. Any and all rebuttal exhibits;

31. Any exhibit listed or used by any other party.

## B.   BY   DEFENDANT/CROSS-CLAIMANT,   MURPHY EXPLORATION & PRODUCTION COMPANY:

1. Plaintiff's employment records with Dynamic Industries, Inc. together with those of prior and subsequent employers.

2. Plaintiff's records with East Jefferson Vo-tech, on Airline Highway, Metairie, Louisiana, which he received training in building maintenance, as a diesel mechanic and as a welder.

3. Dynamic Industries, Inc. Accident Report dated January 19, 1998.

4. Photographs and video film of the *M/V WHITE DOVE*.

5. Boat logs of *M/V WHITE DOVE* for 12/9/97.

6. B&J Martin/*WHITE DOVE* Daily Master's log for 12/9/97.

7. Specifications of *M/V WHITE DOVE*.

8.    B&J Martin Safety Meeting Report 7/6/97 – 12/27/97.

9.    B&J Martin Safety Manual.

10.    Murphy Exploration & Production Company Accident Report dated 12/9/97.

11.    Murphy Exploration & Production Company Summary of Operations for Ship Shoal 224-A for 12/8/97 – 12/12/97.

12.    Murphy Exploration & Production Company Progress Reports for Ship Shoal 224 from 11/24/97 – 12/31/97.

13.    Record of plaintiff's LHWCA Claim and Settlement.

14.    Employer's First Report of Injury or Occupational Illness, Form LS-202 dated 1/20/98 filed by Dynamic Industries, Inc.

15.    Dario Pineda's Federal Tax Return.

16.    Dario Pineda's Social Security earnings records.

17.    Time Charter dated November 5, 1997.

18.    Master Service Agreement of Murphy Exploration & Production Company and B&J Martin, Inc. dated July 31, 1992 executed by Gail M. Martin of B&J Martin, Inc.

19.    Plaintiff's Answers to Interrogatories propounded by Murphy

Exploration & Production Company showing all of plaintiff's employers from 1990-1997.

   20. Certificate of Inspection from the United States Coast Guard regarding the *M/V WHITE DOVE* dated February 5, 1997.

   21. Certificate of Documentation from the United States Coast Guard regarding the *M/V WHITE DOVE* dated February 3, 2000.

   22. Personnel file of Thomas D. Goughehour from employer, B&J Martin, Inc.

   23. Report of Marine Accident, Injury or Death from the United States Coast Guard regarding the *M/V WHITE DOVE,* date of accident 9/9/98.

   24. Report of Marine Accident, Injury or Death from the United States Coast Guard regarding the *M/V WHITE DOVE* dated 1/7/99.

   25. Articles of Incorporation of B&J Martin, Inc. dated November 10, 1967.

   26. Amendments to Articles of Organization of Coast Trawlers, Inc. dated September 9, 1999.

   27. Personnel file of Dario Pineda from employer, Basic Industries, Inc.

   28. Daily Production Report from Murphy Exploration and Production Company regarding Ship Shoal 224A, dated 12/9/97.

29.    Medical records of Dr. Steven L. Holmes in regards to his examination of Dario Pineda on November 18, 1999.

30.    Master Service Agreement between Murphy Exploration & Production Company and Dynamic Industries, Inc. dated July 31, 1997.

31.    Letter from W. Patrick Heimel dated October 19, 1992 to B&J Martin, Inc. regarding new Master Service Agreements dated July 31, 1992.

32.    Any and all of plaintiff's medical records relating to the alleged accident in question and all prior and subsequent medicals, whether related to the alleged accident or not, including plaintiff's pre-employment physical with Basic Industries in late 1999.

33.    Plaintiff's discovery deposition, and any and all medical records and documents relative to the matter entitled *Dario Pineda v. Transamerican Refining Corporation*, Civil Action No. 94-1509, Section "A", United States District Court for the Eastern District of Louisiana.

34.    Any and all medical records and documents relative to the matter entitled *Dario Pineda v. Paul Sloan, et al*, Proceeding No. 93-5604, Division "M", in the Civil District Court for the Parish of Orleans, State of Louisiana.

35.    Medical records of Dr. F. Allen Johnston in regards to his examination and treatment of Dario Pineda.

35

36.    Medical records of Dr. Kenneth E. Vogel in regards to his examination and treatment of Dario Pineda.

37.    Medical records of Dr. Joseph F. Guenther in regards to his examination and treatment of Dario Pineda.

38.    Medical records of Dr. Daniel H. Johnson, Jr. in regards to his examination and treatment of Dario Pineda.

39.    Any and all medical records of Mercy Hospital in regards to the treatment of Dario Pineda.

40.    Any and all medical records of Medical Center of Louisiana in regards to the treatment of Dario Pineda.

41.    Complaint for Damages in *Dario Pineda v. Transamerican Refining Corp.*, Civil Action No. 94-1509, Section "A", United States District Court for the Eastern District of Louisiana.

42.    Petition for Damages in *Dario Pineda v. Paul Sloan, et al*, Civil Action No. 93-5604, Division "A", Civil District Court for the Parish of Orleans.

43.    Plaintiff's criminal records from Jefferson Parish, Orleans Parish and/or the State of Louisiana, including records from Jefferson Parish Police Department, the Department of Corrections and from Angola State Penitentiary.

44.    Plaintiff's records from the Department of Justice and Immigration & Naturalization Service.

45.    A Time line of Evidence of plaintiff's activities from 1987 to 2001.

46.    Any exhibit listed or used by any other party.

C.    **BY DEFENDANT, CROSS-DEFENDANT, B & J MARTIN, INC.:**

1.    B&J Martin adopts the list of Exhibits provided by Murphy;

2.    Recommended Practice for Operation and Maintenance of Offshore Cranes--American Petroleum Inst. (2d ed.)

D.    **BY THIRD PARTY DEFENDANT, DYNAMIC INDUSTRIES, INC.:**

1.    Dynamic Time Tickets;

2.    Murphy's Summary of Operations;

3.    Murphy's Platform Progress Reports;

4.    Murphy's Accident /Illness Report;

5.    Dynamic's Accident Report;

6.    Employer's First Report of Injury;

7.    Master Service Contract between Dynamic Industries, Inc. and Murphy Exploration and Production Company dated July 31, 1992;

8.    Any and all written work orders in effect at the time of the accident;

9.      Any and all correspondence or documentation between Dynamic and Murphy referring to the work being done by Dynamic;

10.     Any and all relevant insurance policies of any and all parties to this lawsuit which were in effect at the time of the alleged accident;

11.     Any and all depositions taken in this case, including all attachments;

12.     Any and all safety documentation, including but not limited to manuals, instructions, Safety Meeting Minutes, policies, procedures, videotapes;

13.     Any and all relevant charts, maps, drawings, sketches, diagrams, models or other graphic representations pertaining to the alleged accident;

14.     Any and all relevant photographs;

15.     Exhibits and documents attached to or referred to or discussed in any deposition;

16.     Any and all pleadings and discovery pleadings, including responses;

17.     Any and all documents produced in response to a subpoena duces tecum;

18.     Any and all documents produced in response to discovery;

19.     Any and all exhibits or documents listed by any other party.

**E.      BY INTERVENOR, EAGLE PACIFIC INSURANCE COMPANY:**

1.    Wage records on plaintiff from the time of injury;

2.    All medical records on plaintiff;

3.    All records of payments to or on behalf of the plaintiff made by Eagle Insurance Company and comprising any portion of Eagle Insurance's Company's lien;

4.    Any exhibit listed by any other party that is not the subject of an objection by intervenor;

5.    Any and all correspondence between any of the parties to the case;

6.    Any and all depositions taken in connection with this case or the compensation proceeding;

7.    Any and all written discovery and discovery responses by any of the parties to this case;

8.    The workers compensation policy issued by Eagle Pacific Insurance Company to Dynamic Industries, Inc. and in force and effect at the time of the injury to the plaintiff.

The parties have met and exchanged copies of all exhibits. All parties agree to the authenticity and relevance of the above exhibits and agree they may be admitted without objection.

**11.**

## DEPOSITION TESTIMONY

A.     Plaintiff Dario Pineda intends to introduce the deposition testimony of any party not present at trial or unavailable to testify at trial.  Plaintiff also intends to introduce any deposition testimony necessary for impeachment purposes.

B.     None by Murphy Exploration & Production Company.

C.     Dynamic  intends to introduce the deposition testimony of any party not present at trial or unavailable to testify at trial.  Dynamic also intends to introduce any deposition testimony necessary for impeachment purposes.

**12.**

## DESCRIPTION OF CHARTS, GRAPHS, ETC

### A.     BY PLAINTIFF, DARIO PINEDA:

In both opening statement and closing argument, counsel for plaintiff Dario Pineda intends to use charts and other graphics.

### B.     BY MURPHY EXPLORATION & PRODUCTION COMPANY:

In both opening statement and closing argument, counsel for Murphy Exploration & Production Company intends to use a Time line of Evidence (a chronology of events) based on the exhibits to be presented into evidence.  The Time line of Evidence may be presented either by chart or electronically.

C.    **BY B&J MARTIN, INC.:**

B&J Martin, Inc. plans on utilizing charts, a time line and blow-up reproductions of deposition testimony.

D.    **BY DYNAMIC INDUSTRIES:**

Dynamic may use charts or illustrative materials or drawings on a blackboard or dry inkboard or on large poster-size paper, to illustrate the facts of the case, the relationship of the parties, and the testimony of the various witnesses, or any other similar objects for use in the opening and closing statements;

Dynamic may use enlargements of relevant photographs and of other relevant exhibits;

**13.**

**WITNESSES**

The following is a list of witnesses each party intends to call to testify at trial:

A.    **BY PLAINTIFF, DARIO PINEDA:**
      *Plaintiff, Dario Pineda*

1.    Dr. Shael Wolfson and/or
      Dr. Thomas R. Dalton - Economics Expert (will call)

2.    A representative of Dynamic Industries, Inc. to identify and
      testify about the Dynamic Industries Accident Report.

3.    Captain Hoyt Plumley
      707 Bellanger Street

41

Morgan City, LA  70380 - (may call)
concerning the facts and circumstances of the alleged
accident

4.     Captain Al Gaugenhour
       334 Lumpkin Road
       Carriere, MS   39426 - (may call)
       concerning the facts and circumstances of the alleged
       accident

5.     James Ford
       3405 West Milan Avenue
       Sheridan, CO   80110 - (may call)
       concerning the facts and circumstances of the alleged
       accident

6.     Jeffrey Young
       107 Yoakum Avenue
       DeQuincy, LA  70633 - (may call)
       concerning the facts and circumstances of the alleged
       accident

7.     Hector Pazos
       Naval Architect and Marine Surveyor
       Ocean-Oil International Corp.
       724 Sunflower Drive *may*
       Palm Harbor, FL - (~~will call~~)
       concerning the unsuitability of the *M/V WHITE DOVE* for
       her intended use as an offshore utility boat

8.     Don Dixon
       Murphy Exploration &   Production Co.
       P. O. Box 42
       118 Warren Street
       Ferriday, LA   71334 - (will call) Crane Operator
       concerning the facts and circumstances of the alleged

accident of December 9, 1997

9.    Deric Dubois, Sr.
      Dynamic Industries
      2401 Knightway Drive
      Gretna, LA 70056 - (may call)
      concerning the facts and circumstances of the alleged
      accident of December 9, 1997

10.   Chris Rogers
      Dynamic Industries
      422 New Haven Street
      Raceland, LA   70394 - (may call)
      concerning the facts and circumstances of the alleged  accident of
      December 9, 1997

11.   Joe Fowler
      Dynamic Industries
      P. O. Box 813
      Houghton, LA   70137 - (may call)
      concerning the facts and circumstances of the alleged accident of
      December 9, 1997

12.   Raymond Sweat
      Dynamic Industries
      501 Zinnia Avenue
      Metairie, LA   70001 - (may call)
      concerning the facts and circumstances of the alleged accident of
      December 9, 1997

13.   Alan S. Silva
      Dynamic Industries
      2600 Trinbalier Drive
      Marrero, LA   70072 - (may call)
      concerning the facts and circumstances of the alleged accident of
      December 9, 1997

43

14.    Phillip Koury
       Murphy Exploration & Production Company
       Alexandria, LA - (may call) Instrument Technician
       concerning the preparation of Murphy's Accident Report

15.    Archie Coulon
       Murphy Exploration & Production Company
       P. O. Box 4149C
       Privateer Blvd.
       Barataria, LA   70036  - (may call)
       concerning the operations of Ship Shoal 224

16.    Dr. Charles Anastasio
       Belle Chasse Medical Services
       7772-A Highway 23
       Belle Chasse, LA   70037 - (may call)
       concerning his treatment of plaintiff in December 1997

17.    Dr. Raul R. Diaz
       315 W. Genie Street
       Chalmette, LA   70043 - (may call)
       concerning his treatment of plaintiff in 1998-1999

18.    Bryan M. Soulie, P.T.
       Kenner Orthopedic & Sports Therapy, Inc.
       Fountain Square Center
       3550 Williams Boulevard
       Kenner, LA   70065  - (may call)
       concerning his evaluation of plaintiff in 1998-1999

19.    F. Allen Johnston, M.D.
       Orthopedic Surgery
       2930 Canal Street, Suite 301
       New Orleans, LA 70119 - (may call)
       concerning treatment of plaintiff

44

20. Impeachment and/or rebuttal witnesses;

21. Any witness needed to introduce or authenticate an exhibit;

22. Any other witness listed by any other party to this litigation.

**B.    BY DEFENDANT/CROSS-CLAIMANT, MURPHY EXPLORATION & PRODUCTION COMPANY:**

1. Dario Pineda
   Plaintiff, under cross-examination (will call)

2. Karen Diaz, Mrs. Pineda,
   plaintiff's wife Address Unknown - (may call)
   concerning plaintiff's activities

3. Marianne Lopez
   500 Eisenhower
   Metairie, LA - (may call)
   concerning plaintiff's activities

4. Roberto Lopez
   500 Eisenhower
   Metairie, LA - (may call)
   concerning plaintiff's activities

5. Dario Pineda's Mother
   500 Eisenhower
   Metairie, LA - (will call)
   concerning plaintiff's activities

6. A representative of Dynamic Industries, Inc. to identify and
   testify about the Dynamic Industries Accident Report.
   - (will call)

45

7.  Captain Hoyt Plumley
    707 Bellanger Street
    Morgan City, LA  70380 - (may call)
    concerning the facts and circumstances of the alleged
    accident

8.  Captain Al Gaugenhour
    334 Lumpkin Road
    Carriere, MS  39426 - (may call)
    concerning the facts and circumstances of the alleged
    accident

9.  James Ford
    3405 West Milan Avenue
    Sheridan, CO  80110 - (may call)
    concerning the facts and circumstances of the alleged
    accident

10. Jeffrey Young
    107 Yoakum Avenue
    DeQuincy, LA  70633 - (may call)
    concerning the facts and circumstances of the alleged
    accident

11. Hector Pazos
    Naval Architect and Marine Surveyor
    Ocean-Oil International Corp.
    724 Sunflower Drive
    Palm Harbor, FL - (will call)
    concerning the unsuitability of the *M/V WHITE DOVE* for
    her intended use as an offshore utility boat

12. Dr. Kenneth Boudreaux
    1424 Bordeaux Street
    New Orleans, LA 70115
    or Dan M. Cliffe, C.P.A., or
    J. Stuart Wood, Ph.D. - (will call) Expert Economist

concerning plaintiff's past and future wage loss and loss of earning capacity, if any

13. Jimmie B. Martin, Sr.
18104 West Main Street
Galliano, LA  70354 - (may call)
concerning the Master Service Agreement of July 31, 1992
and the navigation characteristics of the *M/V WHITE DOVE*

14. Tim Clay
Murphy Supervisor   -

15. Don Dixon
Murphy Exploration &   Production Co.
P. O. Box 42
118 Warren Street
Ferriday, LA   71334 - (will call) Crane Operator
concerning the facts and circumstances of the alleged
accident of December 9, 1997

16. Deric Dubois, Sr.
Dynamic Industries
2401 Knightway Drive
Gretna, LA 70056 - (may call)
concerning the facts and circumstances of the alleged
accident of December 9, 1997

17. Chris Rogers
Dynamic Industries
422 New Haven Street
Raceland, LA   70394 - (may call)
concerning the facts and circumstances of the alleged  accident
of December 9, 1997

18. Joe Fowler

Dynamic Industries
P. O. Box 813
Houghton, LA   70137 - (may call)
concerning the facts and circumstances of the alleged
accident of December 9, 1997

19.   Raymond Sweat
Dynamic Industries
501 Zinnia Avenue
Metairie, LA   70001 - (may call)
concerning the facts and circumstances of the alleged accident of
December 9, 1997

20.   Alan S. Silva
Dynamic Industries
2600 Trinbalier Drive
Marrero, LA   70072 - (may call)
concerning the facts and circumstances of the alleged accident of
December 9, 1997

21.   Phillip Koury
Murphy Exploration & Production Company
Alexandria, LA - (will call) Instrument Technician
concerning the preparation of Murphy's Accident Report

22.   Archie Coulon
Murphy Exploration & Production Company
P. O. Box 4149C
Privateer Blvd.
Barataria, LA   70036  - (will call)
concerning the operations of Ship Shoal 224

23.   Dr. Robert Steiner
3525 Prytania Street
 Suite 501
New Orleans, LA   70115 - (will call)

concerning his treatment of plaintiff in 1994 and his IME of plaintiff in December 1999

24.   Dr. Charles Anastasio
      Belle Chasse Medical Services
      7772-A Highway 23
      Belle Chasse, LA   70037 - (will call)
      concerning his treatment of plaintiff in December 1997 and his discharge of plaintiff to return to regular work in January 1998

25.   Dr. Raul R. Diaz
      315 W. Genie Street
      Chalmette, LA   70043 - (may call)
      concerning his treatment of plaintiff in 1998-1999

26.   Gary Lo Piccolo
      Moreno Energy Services
      3508 Curtis Lane
      New Iberia, LA   70562-9406 - (may call) Safety Manager

27.   Bryan M. Soulie, P.T.
      Kenner Orthopedic & Sports Therapy, Inc.
      Fountain Square Center
      3550 Williams Boulevard
      Kenner, LA   70065  - (may call)
      concerning his evaluation of plaintiff in 1998-1999

28.   Dr. William Armington
      Metairie Imaging
      Elmwood MRI, Ltd.
      3400 Division Street
      Metairie, LA   70002 - (may call)
      concerning his testing of plaintiff in 1998-1999

29.     William P. Heimel
        Murphy Exploration & Production Company
        South Robertson Street
        New Orleans, LA - (will call) Claims Manager
        concerning his letters to B&J Martin, Inc. and Dynamic Industries
        about the new Master Service Agreements dated July 31, 1992

30.     Gail M. Martin
        B&J Martin, Inc.
        18104 West Main Street
        Galliano, LA   70354 - (may call)
        concerning Mr. Heimel's letter dated October 19, 1992, the
        Master Service Agreement dated July 31, 1992 and records
        of the *M/V WHITE DOVE*

31.     Dr. Steven L. Holmes
        Ascension Medical Clinic
        1004 West Highway 30
        Gonzales, LA   70737 - (will call)
        concerning treatment of plaintiff in 1994

32.     Custodian of Medical Records
        Back in Action Center
        Touro Rehabilitation Center
        3450 Chestnut Street
        New Orleans, LA 70115 - (may call)
        concerning treatment of plaintiff in 1994

33.     Dr. Cesar M. Roca
        Orthopedic Surgery
        133 Belle Terre Boulevard

LaPlace, LA   70068  - (may call)
concerning treatment of plaintiff in 1994

34.    Dr. A. Jay Binder
       Orthopedic Surgery
       133 Belle Terre Boulevard
       LaPlace, LA   70068  - (may call)
       concerning treatment of plaintiff in 1994

35.    Dr. Terence C. D'Souza
       St. Jude Medical Office Building
       200 West Esplanade Ave., Suite 610
       Kenner, LA  70065   - (may call)
       concerning treatment of plaintiff in 1994

36.    Dr. Michael A. Wilensky
       St. Jude Medical Office Building
       200 West Esplanade
       Suite 610
       Kenner, LA   70065  - (may call)
       concerning treatment of plaintiff in 1994

37.    Dr. Thomas G. Puckett
       Puckett Laboratory
       4200 Mamie
       Hattiesburg, MS  39402 - (may call)
       concerning treatment of plaintiff in 1994

38.    Diagnostic Imaging Center
       3437 Prytania
       New Orleans, LA 70115 - (may call)
       concerning treatment of plaintiff in 1994

39.    Custodian of Medical Records
       St. John Rehab Clinic
       504 Rue De Sante

51

LaPlace, LA   70068  - (may call)
concerning treatment of plaintiff in 1994

40.    Custodian of Medical Records
       Medical Rehab Consultants, Inc.
       P. O. Box 55056
       Metairie, LA   70055 - (may call)
       concerning treatment of plaintiff in 1994

41.    Louisiana Workers Compensation Corporation
       Custodian of Records
       2237 South Acadian Thruway
       Suite 102
       Baton Rouge, LA   70808 - (may call)
       concerning treatment of plaintiff in 1994

42.    Ken Soyez
       Murphy Exploration & Production Company
       131 South Robertson Street
       New Orleans, LA   70112 - (may call)
       Manager-Offshore Operations
       concerning the Time Charter of the *M/V WHITE DOVE*

43.    F. Allen Johnston, M.D.
       Orthopedic Surgery
       2930 Canal Street, Suite 301
       New Orleans, LA 70119 - (may call)
       concerning treatment of plaintiff

44.    Kenneth E. Vogel, M.D.
       Vogel and LeClercq
       2912 Canal Street
       New Orleans, LA   70119 -  (may call)
       concerning treatment of plaintiff

45.    Custodian of Medical Records Mercy Hospital

301 N. Jefferson Davis Pkwy.
New Orleans, LA   70119 - (may call)
concerning treatment of plaintiff

46.     Dr. Joseph F. Guenther
        2021 Canal Street
        New Orleans, LA   70119 - (may call)
        concerning treatment of plaintiff

47.     Daniel H. Johnson, Jr., M.D., F.A.C.R.
        Clearview Medical Imaging
        3100 Clearview Parkway
        Metairie, LA   70006 - (may call)
        concerning treatment of plaintiff

48.     Dr. Dan Fertel
        Radiologist
        Charity Hospital
        1532 Tulane Avenue
        New Orleans, LA - (may call)
        concerning treatment of plaintiff

49.     Dr. Larry Weiss
        1532 Tulane Avenue
        New Orleans, LA - (may call)
        concerning treatment of plaintiff

50.     Dr. Hubbell
        1532 Tulane Avenue
        New Orleans, LA - (may call)
        concerning treatment of plaintiff

51.     Dr. Daniel Valle
        1532 Tulane Avenue
        New Orleans, LA - (may call)
        concerning treatment of plaintiff

52.    A representative of the Department of Justice and Immigration
&amp; Naturalization Service - (will call )
concerning the Warrant of Removal/Deportation

**C.    FOR DEFENDANT/CROSS-DEFENDANT, B&amp;J MARTIN,
INC.;**

1.    Dario Pineda, under cross-examination
will-call

2.    Karen Diaz
may-call

3.    Jimmie Martin
may - call

4.    Don Dixon - Murphy Crane Operator
may-call

5.    Dr. Robert Steiner - expert
may-call

6.    Kenneth H. Boudreaux - Expert Economist
may-call

7.    Richard Trisler - Basic Industries
may-call
To testify concerning Plaintiff's employment at Basic Industries,
Inc.

8.    Supervisor at Basic Industries, Inc.
may-call
To testify concerning Pineda's actual work at Basic Industries

9.    Timothy B. York - Special Agent

54

Immigration & Naturalization Services
may-call
To testify concerning Dario Pineda's status as an illegal alien

10. William M. Black - Special Agent
Immigration & Naturalization Service
may-call
To testify concerning Dario Pineda' status as an illegal alien

11. Captain Doug Gougenhour
may-call

12. Archie Coulon
may-call

13. Dr. Charles Anastasio - Expert
may-call

14. Dr. Raul Diaz - Expert
may-call

15. Dr. Allen Johnston - Expert
may-call

16. Custodians of all records/exhibits listed in Section 10.
may-call

17. Any witness listed by Murphy, Dynamic and the plaintiff, Dario
Pineda.
may-call

**D.    FOR THIRD PARTY DEFENDANT, DYNAMIC INDUSTRIES,**

**INC.:**

1. Joe Tortomase

55

DYNAMIC INDUSTRIES, INC.
1220 Peters Road
Harvey, LA 70058
Will testify regarding all issues addressed in Dynamic's Motion
for Summary Judgment, as well as other facts surrounding work
performed by Dynamic;

2.      Pete Russo
        DYNAMIC INDUSTRIES, INC.
        Post Office Box 53507
        Lafayette, LA 70505
        Will testify regarding all issues addressed in Dynamic's
        Motion for Summary Judgment, as well as other facts
        surrounding work performed by Dynamic;

3.      Troy Collins
        DYNAMIC INDUSTRIES, INC.
        P. O. Box 9406
        New Iberia, LA 70562
        Will testify regarding all issues addressed in Dynamic's
        Motion for Summary Judgment, as well as other facts
        surrounding work performed by Dynamic;

4.      Deric Dubois, Dynamic Industries, Inc.
        Will testify regarding all issues addressed in Dynamic's
        Motion for Summary Judgment, as well as other facts
        surrounding work performed by Dynamic;

5.      Chris Rogers, Dynamic Industries, Inc.
        Will testify regarding all issues addressed in Dynamic's
        Motion for Summary Judgment, as well as other facts

surrounding work performed by Dynamic

6.  Joe Fowler, Dynamic Industries, Inc.
    Will testify regarding all issues addressed in Dynamic's
    Motion for Summary Judgment, as well as other facts
    surrounding work performed by Dynamic;

7.  Allan Silva, Dynamic Industries, Inc.
    Will testify regarding all issues addressed in Dynamic's
    Motion for Summary Judgment, as well as other facts
    surrounding work performed by Dynamic;

8.  Raymond Sweat, Dynamic Industries, Inc.
    Will testify regarding all issues addressed in Dynamic's
    Motion for Summary Judgment, as well as other facts
    surrounding work performed by Dynamic;

9.  Randy Leggett, Dynamic Industries, Inc.
    Will testify regarding all issues addressed in Dynamic's
    Motion for Summary Judgment, as well as other facts
    surrounding work performed by Dynamic;

10. Tim Clay
    Will testify regarding all issues addressed in Dynamic's
    Motion for Summary Judgment, as well as other facts
    surrounding work performed by Dynamic;

11. Plaintiff, Dario Pineda
    Will testify regarding all issues addressed in Dynamic's
    Motion for Summary Judgment, as well as other facts
    surrounding work performed by Dynamic;

12. Captain Thomas Gougenhour
    Will testify regarding all issues addressed in Dynamic's
    Motion for Summary Judgment, as well as other facts
    surrounding work performed by Dynamic;

13.    Captain Hoyt Plumley
       Will testify regarding all issues addressed in Dynamic's
       Motion for Summary Judgment, as well as other facts
       surrounding work performed by Dynamic;

14.    James Ford Jr.
       Will testify regarding all issues addressed in Dynamic's
       Motion for Summary Judgment, as well as other facts
       surrounding work performed by Dynamic;

15.    Jeffrey Young
       Will testify regarding all issues addressed in Dynamic's
       Motion for Summary Judgment, as well as other facts
       surrounding work performed by Dynamic;

16.    Phillip Koury
       Will testify regarding all issues addressed in Dynamic's
       Motion for Summary Judgment, as well as other facts
       surrounding work performed by Dynamic;

17.    Representatives of Murphy Exploration & Production Co.
       Will testify regarding all issues addressed in Dynamic's
       Motion for Summary Judgment, as well as other facts
       surrounding work performed by Dynamic;

18.    Representatives of B&J Martin
       Will testify regarding all issues addressed in Dynamic's
       Motion for Summary Judgment, as well as other facts
       surrounding work performed by Dynamic;

19.    Representatives of Dynamic Industries, Inc.
       Will testify regarding all issues addressed in Dynamic's
       Motion  for Summary Judgment, as well as other facts
       surrounding work performed by Dynamic;

20.    Impeachment and/or rebuttal witnesses;

21.    Any witness needed to introduce or authenticate an exhibit;

22.    Any other witness listed by any other parties to this litigation.

**E.        FOR INTERVENOR, EAGLE PACIFIC INSURANCE COMPANY:**

1.    Dario Pineda, regarding how the accident happened and his receipt of workers' compensation benefits and any other issues related to the intervenor's lien;

2.    A representative of Dynamic Industries, Inc., on the issue of whether the plaintiff was in the course and scope of his employment at the time the accident happened and any other issues related to the intervenor's lien.

3.    A representative of Eagle Pacific Insurance Company, to testify regarding all issues surrounding the intervenor's lien;

4.    Any and all medical providers who attended plaintiff in connection with this claim, to testify regarding whether their treatment of the plaintiff was related to the injury, was reasonable and necessary and that they were paid by the intervenor, if such was the case;

5.    Any and all vocational experts that evaluated the plaintiff, to testify regarding any and all issues relating to the intervenor's lien;

59

6.    Any witness listed by any other party who is not the
       subject of an objection by intervenor.

The Witness List was filed in accordance with prior court orders and agreement of counsel. Counsel have exchanged reports of expert witnesses in accordance with prior court orders and agreement of counsel.

**14.**

## JURY STATEMENTS

This case will be tried before a jury as to plaintiff's case in chief. Defendants request that contractual indemnity issues be tried to the Court. Proposed jury instructions, special jury interrogatories, trial memoranda and special questions for prospective jurors on voir dire shall be delivered to the Court and opposing counsel not later than five working days prior to the trial date unless specific leave to the contrary is granted by the court. As to non-jury issues suggested findings of fact and conclusions of law and separate trial memoranda and also required to be filed not less than five working days before trial.

**15.**

## STATEMENT RELATIVE TO BIFURCATION

## OF LIABILITY AND DAMAGES

Defendants request that the indemnity issues among Murphy Exploration & Production Company, B&J Martin, Inc. and Dynamic Industries, Inc. be bifurcated and tried separately at another trial setting if it becomes necessary to try those issues after the jury verdict

60

is rendered.

### 16.

### OTHER MATTERS STATEMENT

Whether the district court has the jurisdiction/authority to order plaintiff to remain within the jurisdiction of this court in contradiction to a removal order placed on plaintiff by the Department of Immigration and Naturalization Services mandating Mr. Pineda's immediate removal from the United States upon being incarcerated.

### 17.

### TRIAL DATE AND LENGTH

Trial Shall commence on Tuesday, January 22, 2002 at 8:30 a.m.  Trial is expected to last four (4) days.

### 18.

### FORMULATION OF ORDER

This pre-trial order has been formulated after conference at which counsel for the respective parties have appeared in person.  Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.  Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

## 19.

## <u>SETTLEMENT</u>

Possibility of settlement of this case was considered at a settlement conference

conducted by U.S. Magistrate Sally Shushan on Wednesday, July 17, 2001. Defendants have

made no offer of settlement in response to plaintiff's settlement demands.

Respectfully submitted,

W. PATRICK KLOTZ (#17877)
KLOTZ & EARLY
530 Natchez Street, Suite 250
New Orleans, Louisiana 70130
Attorney for Plaintiff, Dario Pineda

James H. Daigle, T.A. (#4495)
THOMAS A. PORTEOUS (#27039)
LEMLE & KELLEHER, L.L.P.
Pan-American Life Center
601 Poydras Street, 21st Floor
New Orleans, Louisiana 70130
Attorneys for Defendant/Cross-
claimant, Murphy Exploration
& Production Company

L. ETIENNE BALART (#24951)
JEFFERSON R. TILLERY (#17831)
JONES, WALKER, WAECHTER,
POITEVENT, CARRERE & DENEGRE
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana   70170-5100
Attorneys for Defendant/Cross-
Defendant/Counter-Claimant, B&J
Martin, Inc.

*by permission*

JAMES C. DONOHUE (#18869)
CRAWFORD & LEWIS
Bank One – North Tower
450 Laurel Street, Suite 1600
Baton Rouge, Louisiana   70821-3656
Attorney for  Third Party Defendant, Dynamic
Industries, Inc.

*by permission*

HENRY H. LEBAS, T.A. (#23185)
JEFF R. RYTLEWSKI (#25231)
100 E. Vermilion Street, Suite 201
Lafayette, Louisiana   70501
Attorneys for Intervenor, Eagle Pacific Insurance
Company

SIGNED, this 10th day of January, 2002, at New Orleans, Louisiana.

UNITED STATES DISTRICT JUDGE

63